# UNITED STATES

*v.*

# GEORGE R. SHANTON.

San Juan, Criminal, No. 530.

## AS TO ARREST OF JURYMEN.

Arrest of Jurymen—Obstructing Justice.

    1. Sec. 5399 of the Revised Statutes U. S. Comp. Stat. 1901, p. 3656 provides for the punishment of one obstructing the administration of justice, but this does not apply to a case of a policeman arresting a juryman, when brought before the court for contempt.

Same—Contempt.

    2. The arrest at recess of a juryman trying a case is a contempt of court within the purview of § 725 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 583, whether it be at a courthouse or on the street.

Same.

    3. No officer of the United States is above the law, but the matter of enforcement of the law varies with circumstances. There can be no arrest of an official of court during the trial of a case, without the consent of the court itself.

Same—Recess.

    4. Under Re Neagle, 135 U. S. 1, 34 L. ed. 55, 10 Sup. Ct. Rep. 658, a juror is protected during the recess of the trial court, the same as if in the jury box.

Same—Harboring Criminals.

    5. A court, however, will not harbor a criminal because he is a juror, and fixes the rule that jurors while not in the box may be arrested, provided they are brought by the officer to the bar of the court for directions.

---

NOTE.—The question whether misconduct toward juror constitutes contempt is discussed in a note in 46 L.R.A. (N.S.) 517.

United States v. Shanton.

Courts—Jurisdiction.
> 6. The procedure of the court must be protected in its entirety, because courts furnish the touchstone of every law. A trial is more important than an arrest.

Juries—Part of Court.
> 7. A jury engaged in the trial of a case is as much a part of the court as the judge, and will be protected accordingly.

Opinion filed June 17, 1913.

----

*Mr. W. N. Landers,* United States attorney, for the plaintiff.

*Mr. W. H. Pitkin, Jr.* Attorney General of Porto Rico, for the defendant.

HAMILTON, Judge, delivered the following opinion:

This is a case in which the defendant is summoned to show cause why he should not be punished for contempt for arresting a juror of this court while engaged in the trial of a case. At the particular time the court was in recess at noon, and the juror was permitted to return to the court at the end of the noon recess, and serve on the jury. At the same time he was under observation by the police while in the box discharging his duties, and that afternoon, after the adjournment of court, he was again arrested and detained over night, not in the common jail, but still at the police headquarters. The next morning he was brought here in the custody of an officer, and so remained until the judge of this court instructed the marshal to have the officer withdraw and leave the juror here.

There is no question that the police throughout acted in the

United States v. Shanton.

discharge of their duties as they understood them. There is no criticism whatever as to that. The only question is as to the principle of the matter. And, furthermore, the chief of police has assumed full responsibility for the acts of the officers, as is perfectly proper, and has filed an answer to the rule to the effect that he submits to the jurisdiction of the court, and voluntarily agrees that this shall not occur in the future; that an order will issue to his officers that, should a warrant under a felony case, for instance, be put in their hands, against a juror or witness or officer of the court, the extent to which the officer will go will be to bring the individual in question to the bar of this court for such disposition as the court may deem proper.

The occasion is an interesting one in itself, and from the research of counsel on both sides, the Attorney General of Porto Rico for Mr. Shanton, and the District Attorney, whom the court requested to look it up from the other point of view. It might be well to state the principle that the court thinks governs this case, for the guidance of the court and others in the future.

Sec. 5399 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3656, provides that anyone who by force obstructs the due administration of justice, or impedes its due administration, is guilty of an offense which shall be punished. Of course this is not that case. There is no indictment, no information filed here, but the section shows the policy of the law.

Whatever is done in this case must be under § 725 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 583, which provides for the punishment of contempt of this court; perhaps I may say, rather, limits the power of the court to punish for contempt, and the wording of that section is that the misbehavior of any person in the presence of the court, or so near thereto as to ob-

struct the administration of justice, must and shall be punished
as a contempt.   The court holds that that section is applicable to
this case.   It is true, part of the offense was committed on
the plaza of this city, and not in the immediate presence of the
court, but the whole matter, taken together, seems to be such as
could fairly be said to be in the presence of the court, or so near
thereto as to obstruct the administration of justice.   I think
I would have jurisdiction under that section, and would act
but for the apology made by the chief.

The argument made on the other side seems to me to be
fallacious in this: The principal case relied upon is United
States v. Kirby, 7 Wall. 482, 19 L. ed. 278, where a letter carrier
or some such officer, was arrested upon a charge of felony, I
believe, under an indictment, and the Supreme Court goes on
to say, very properly and very emphatically, that there is no
officer of the United States that is above the law.   All are sub-
ject to arrest for a felony.   No question is made about that.
The only point is, that, where two co-ordinate branches of the
government are interested, each must discharge its duties with
some reference to the other.   No contention whatever would
be made, I suppose, that a policeman could come in and arrest
a juror in the box, or could come in and arrest the presiding
judge during the trial of a case.   I do not think that would be
contended by anyone.   And the court holds that the same rule
applies to a juror or a witness actually in the trial of a case,
whether he be in the court room, or whether the court be in
recess for the time being; there is no difference in principle.
And the court is even more solicitous for its officers, witnesses,
and jurors than it would be for itself; and the court cannot but
recall that the jury is just as much a part of the court as the

United States v. Shanton.

judge himself is, and would, and intends to, protect jurors just as fully as it would itself. The only difference is that the judge is appointed for a certain term of years, and a jury, which tries facts just as the judge tries the law, is appointed for a certain number of weeks. The principle is the same. One is as necessary as the other to make up the court.

The Supreme Court decided in the case of Re Neagle, 135 U. S. 1, 34 L. ed. 55, 10 Sup. Ct. Rep. 658, a point which I think is analogous. In that case Mr. Justice Field was traveling from one point in the country to another, holding court at different places, and his life was supposed to be in danger from an unsuccessful suitor in the court. A special marshal was traveling with the justice, and, while in the dining room of a railroad station, the marshal shot this unsuccessful suitor, and killed him, while the man was apparently about to attack Justice Field. The Supreme Court held that Mr. Justice Field was just as much in the discharge of his duties while traveling from one place of holding court to another as he was while sitting on the bench holding court. I think that the same principle applies to a juror; that when a juror goes out for dinner or for the night or in any other way while actually engaged in the trial of a case, he should be protected just as the judge in the Field Case.

At the same time, there is no question that this court is not going to harbor criminals in any way, shape, or form. It is of course superfluous to say that. And this court recognizes, as fully as it can be recognized, that the insular authorities in the performance of their duties are performing as high a public duty as this court is within its jurisdiction. We are all a part of one great system, and we owe each other a duty to see that

VI. Porto Rico—14.

there is no clashing. We owe each other the duty to avoid every appearance of that, so far as possible. So the arrangement suggested by which the alleged criminal when arrested shall be brought to this bar for directions is one that will be found to expedite, and not to impede, justice.

It occurs to me that the point is somewhat as follows. If it should be contended, for instance, that it is more important to arrest a man than to try a man,—because that is what it comes to,— the contention is certainly illogical. The duty of the police is to arrest, and the duty of the court is to try. The case of United States v. Kirby was the arrest of a letter carrier, and the Postmaster General has no power whatever to try, no power whatever to protect his subordinates except through the courts, no power to punish for contempt; so that the Kirby Case is entirely unanalogous to this case.

It seems to me that a court of the United States is in certain respects the highest branch of the government which we have under the civilization which we derive from our English ancestors, and which is adopted and adapted now to other communities, because it has the final decision in everything. You take the political side, the legislative side, or anything you please, whatever they say or do, in its last analysis, must come before a court for adjudication. I think I am not wrong in saying that a court is the crown of the Anglo-Saxon civilization, or of any civilization, and that is the reason why I have done what I have not done before; that is, spoken at length on the subject, and that is the reason that even an arresting officer must yield to a court. It would be futile to arrest unless there is a trial. If it were possible to arrest during the progress of a case,—and I hold that this was during the progress of a case,—the adminis-

United States v. Shanton.

tration of justice could be broken up at once. A fictitious arrest in proper form would stop the machinery of justice; and that cannot be permitted.

When we come to consider a jury, in looking back it will be found that the evolution of the jury to the form in which we have it now, is synchronous with the evolution of popular institutions in England; that the jury, and Parliament in its present form, came into existence in the same epoch. They are manifestations of the individual liberty that has ever distinguished the English and their descendants.

The court is bound, therefore, to protect itself, because in protecting itself it is really protecting the best fruits of our civilization. In doing so, it acts with no sense or wish to uphold personal dignity or anything of that sort, but to uphold in this instance, as it would in any other, the supremacy of the courts above every other part of the government; not because they are courts, but because they furnish the touchstone of everything, that everything is tested by a trial. Nothing whatever can be permitted to interfere with the trial of a case in this court. The same would be true of any other court. I am simply speaking of the case which is before us.

For that reason the court takes full jurisdiction of this case, and announces that it will, in accordance with the views just expressed, protect every officer, witness, and juror at all times; protect them to the full extent of the law. But the court wishes to express gratification that the same views prevail with the defendant in this case, and that there is no necessity for any further action. Therefore, so far as this case is concerned, the rule is discharged.